IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PPG INDUSTRIES OHIO, INC., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 21-346-LPS-SRF<br>) |
| AXALTA COATING SYSTEMS, LLC, | )<br>)<br>) |
| Defendant. | )<br>) |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court in this patent infringement action is defendant Axalta Coating Systems, LLC's ("Defendant" or "Axalta") motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (D.I. 12) For the following reasons, I recommend that the court GRANT-IN-PART and DENY-IN-PART Axalta's motion to dismiss.

**II.   BACKGROUND**[2]

On March 5, 2021, plaintiffs PPG Industries Ohio, Inc. and PPG Industries, Inc. ("Plaintiffs" or "PPG") filed this action alleging indirect and willful infringement of U.S. Patent No. 7,981,505 ("the '505 patent") by Axalta's accused Cromax® Pro, Chroma Premier®, ChromaBase®, Vermeera™, and Centari® products (the "Accused Products"). (D.I. 1) The '505 patent, entitled "Coated Articles and Multi-Layer Coatings," discloses various coating

---

[1] The briefing associated with the pending motion is found at D.I. 13, D.I. 16, and D.I. 17.
[2] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

systems comprised of one, two, or three layers for creating uniquely colored surfaces on a substrate, typically the body of an automobile. ('505 patent, cols. 1:24-42) To achieve the stated purpose of the invention, the '505 patent claims a specific type of "tricoat" process involving depositing the component layers in three steps: (1) a metallic basecoat layer over the surface of a vehicle; (2) a color-imparting non-hiding midcoat layer over a portion of that basecoat layer; and (3) a clearcoat layer on top of the midcoat layer. ('505 patent, cols. 26:22-39, 28:3-28; D.I. 1 at ¶¶ 3, 4)

PPG won the Automotive News PACE Award in 2013 for its tint dispersion technology identified by the tradename ANDARO® that practices the '505 patent. (D.I. 1 at ¶ 3) In 2013, Axalta's foreign subsidiary, Axalta Coating Systems Germany GmbH ("Axalta Germany"), unsuccessfully opposed the grant of the '505 patent's corresponding European Patent No. 1776195. (*Id.* at ¶¶ 34, 42; D.I. 16, Ex. B)

### III.  LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-91 (3d Cir. 2016).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft*

*v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Contributory Infringement: Substantial Non-Infringing Use

Pursuant to 35 U.S.C. § 271(c), a patentee must establish that an alleged contributory infringer sold, offered to sell, or imported into the United States a component of an infringing product "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 476 (D. Del. 2012) (quoting 35 U.S.C. § 271(c)). Thus, in order to sufficiently plead a contributory infringement claim, the plaintiff must "plead facts that allow an inference that *the components sold or offered for sale have no substantial non-infringing uses.*" *In re Bill of Lading*

3

*Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (emphasis added).

In support of its motion to dismiss PPG's causes of action for contributory infringement of the '505 patent, Axalta contends that PPG does not adequately plead a lack of substantial non-infringing use. (D.I. 13 at 5-10) According to Axalta, PPG alters the statutory language, alleging that Axalta's products are "especially made or *can be* adapted for use in a multi-layer coating system that infringes,"[3] thereby acknowledging that the same products may also be used in a non-infringing manner. (*Id.* at 7-9, emphasis in original (quoting D.I. 1 at ¶ 43)) Axalta further contends that the '505 patent itself discloses, but does not claim, two substantial non-infringing uses for the claimed and accused components, namely a single-layer coating and a two-layer coating. (*Id.* at 8-9)

In response, PPG alleges that the complaint adequately pleads a lack of substantial non-infringing uses because it alleges that the Accused Products are especially made for use in the multi-layer coating system claimed in the '505 patent, that the Accused Products can be adapted for use in a multi-layer coating system that infringes, and that such products are "not a staple article or commodity of commerce suitable for substantial non-infringing use."[4] (D.I. 16 at 11-13 (citing D.I. 1 at ¶ 43))

---

[3] Axalta argues that PPG attempts to impermissibly amend its pleading in its brief to allege that there are no substantial non-infringing uses by further altering the language in its complaint from "the Accused Products are especially made *or* can be adapted for use in a multi-layer coating system that infringes the '505 Patent" to "the Accused Products are especially made for use in a multi-coating system that infringes the '505 Patent, *and* can be adapted to do so." (D.I. 17 at 2, emphasis added (quoting D.I. 1 at ¶ 43; D.I. 16 at 13))

[4] PPG also requests leave to amend its complaint should the court determine that the complaint does not sufficiently allege that there are no substantial non-infringing uses for the Accused Products. (D.I. 16 at 13)

4

The court recommends dismissing PPG's causes of action for contributory infringement because the complaint provides no factual basis for the court to discern why it is plausible that the Accused Products have no substantial non-infringing use. (D.I. 1 at ¶ 43 (simply parroting the language of the "no substantial non-infringing use" requirement)); *See AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN-SRF, 2018 WL 6974947, at *6 (D. Del. Dec. 27, 2018) (noting that "Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to dismiss under Rule 12(b)(6)"); *See also TriDiNetworks Ltd. v. NXP-USA, Inc.*, C.A. No. 19-1062-CFC-CJB, 2020 WL 2514086, at *3-4 (D. Del. May 15, 2020).

The '505 patent claims a multi-layer coating system comprised of individual components, namely a basecoat, midcoat, and clearcoat. ('505 patent, cols. 26:22-39, 28:3-28) The complaint alleges that, when used together as instructed by Axalta, the Accused Products "have *the capability of operating in a manner that infringes*," but does not consider whether the Accused Products may be used separately from a multi-coating system. (D.I. 1 at ¶ 37, emphasis added); *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2012 WL 6044793, at *16 (D. Del. Nov. 13, 2012), *report and recommendation adopted*, 2013 WL 2295344 (D. Del. May 24, 2013) ("The mere allegation that [the accused product] may be used to infringe is not sufficient to allow a reasonable inference that, *inter alia*, [the accused product] has *no* substantial noninfringing uses") (emphasis in original). Furthermore, the fact that "practicing the patented method may be the most logical or useful purpose for [defendant's] products does not render the alternative uses 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *In re Bill of Lading*, 681 F.3d at 1337 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009)).

Additionally, PPG cites *BioMérieux, S.A. v. Hologic, Inc.* for the proposition that it need not plead specific facts underlying the allegation of no substantial non-infringing use. However, PPG mischaracterizes the court's holding in that case, as the court did not indicate that plaintiffs need not plead specific facts, but rather that plaintiffs adequately pleaded the lack of substantial non-infringing uses by showing that the accused products could not operate without incorporating the patented screening technology. *See BioMérieux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018). PPG's allegation that the Accused Products "can be adapted for use in a multi-layer coating system that infringes the '505 Patent" does not plausibly plead facts that the three components can only be used together to infringe the patent, thus, ruling out substantial non-infringing uses. Pleading the bare conclusion that the Accused Products are not suitable for substantial non-infringing use is not sufficient to withstand a motion to dismiss. *See In re Bill of Lading*, 681 F.3d at 1338 ("Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie"); *See also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1314 (Fed. Cir. 2005). Therefore, the court recommends dismissing PPG's causes of action for contributory infringement.

### B. Indirect Infringement: Knowledge of the Patent

#### 1. Pre-Suit Knowledge of the Patent

Claims of induced and contributory infringement both "require proof that the defendant's conduct occurred after the defendant (1) knew of the existence of the asserted patent and (2) knew that a third party's acts constituted infringement of the patent."[5] *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021); *See Global-Tech*

---

[5] For purposes of the pending motion, Axalta is not challenging that third parties' acts constitute direct infringement. (*See* D.I. 13) Therefore, the court need not address this element.

6

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). Knowledge of the existence of the asserted patent can be shown by willful blindness.[6] *See Global-Tech Appliances*, 563 U.S. at 768.

PPG's complaint alleges that Axalta had knowledge of or was willfully blind to the '505 patent because (1) PPG won the Automotive News PACE Award in 2013 for its ANDARO® pigment dispersion technology that practices the '505 patent (the "Award"); (2) Axalta's foreign subsidiary[7] unsuccessfully opposed European Patent No. 1776195, a foreign counterpart to the '505 patent; and (3) the complaint put Axalta on notice of the '505 patent. (D.I. 1 at ¶¶ 3, 34, 35, 42)

Axalta argues that PPG does not adequately plead that Axalta had pre-suit knowledge of the '505 patent. (D.I. 13 at 10-13) First, Axalta argues that the complaint does not allege that Axalta knew of the Award or that the Award identified the '505 patent, disclosed that the technology was patented, or disclosed the dispersion technology as a multi-layer coating system. (*Id.* at 4, 10-11) In response, PPG argues that it is plausible to infer that Axalta would take notice of PPG's award-winning technology published in industry papers because the technology was "well-known in the automotive industry" and touted as a "game changer" and as having a "significant market impact." (D.I. 16 at 6-7)

---

[6] "[K]nowledge based on willful blindness exists only where '(1) the defendant [ ] subjectively believe[d] that there [was] a high probability that a fact exists and (2) the defendant [ ] [took] deliberate actions to avoid learning of that fact.'" *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (quoting *Global-Tech Appliances*, 563 U.S. at 769).

[7] The complaint alleges that Axalta's subsidiary unsuccessfully opposed the grant of the '505 patent's corresponding European patent. (D.I. 1 at ¶¶ 34, 42) Both parties' briefing indicates, however, that the foreign patent was opposed by a foreign subsidiary of Axalta's *predecessor*. (D.I. 13 at 11; D.I. 16 at 7-8)

7

PPG's allegations involving the Award do not plausibly plead Axalta's pre-suit knowledge of the '505 patent. The complaint alleges that Axalta had knowledge of the Award, by stating that "Upon information and belief, Axalta had actual knowledge of or was willfully blind to the '505 Patent in 2013 after PPG won an award for its ANDARO[®] technology." (D.I. 1 at ¶ 42) Nevertheless, absent from the complaint are allegations bridging knowledge of the Award with knowledge of the patent. The complaint does not allege that the Award disclosed the multi-layer coating system claimed by the '505 patent or that the technology was patented. (*Id.* at ¶¶ 3, 34, 38, 42) Moreover, the CompositesWorld Award announcement included as a link in the complaint does not disclose the ANDARO® technology as a three-layer coating system, does not reference the '505 patent, and does not disclose that the technology is patented.[8] (*Id.* at ¶ 3)

Furthermore, PPG's allegations that Axalta had knowledge of the patent because the patent and award-winning technology were well-known in the automotive industry cannot, by itself, support an inference that Axalta had pre-suit knowledge of the '505 patent. *See SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012) (finding that media publicity surrounding third-party litigation involving the patent-in-suit does not plausibly allege pre-suit knowledge of the patent); *See also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232-33 (D. Del. 2012) ("This court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's

---

[8] The CompositesWorld Award announcement describes that "Andaro tint dispersions enable automotive manufacturers to achieve more vibrant colors, especially in the flop (horizontal) angle…[and] achieve a deep, pure and more chromatic color space than do traditional pigments, helping accentuate the feature lines and design characteristics of the vehicle." *PPG Wins PACE Award for Andaro Tint Dispersions*, CompositesWorld (Apr. 25, 2013), https://www.compositesworld.com/articles/ppg-wins-pace-award-for-andaro-tint-dispersions.

participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent").

Nor do bare allegations of Axalta's participation in the automotive industry support an inference of pre-suit knowledge. *See EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 533-534 (D. Del. 2011) (declining to infer knowledge of the patent "by virtue of [defendants'] participation in the [relevant] market"); *See also ELM 3DS Innovations, LLC v. SK Hynix Inc.*, 14-1432-LPS-CJB, 2016 WL 1274803, at *1 (D. Del. Mar. 31, 2016). In *ELM 3DS Innovations*, the court found the complaint sufficiently alleged pre-suit knowledge of the patent because it included allegations indicating common knowledge of the patent-in-suit, along with allegations that defendants worked to standardize technologies related to the patent-in-suit. *ELM 3DS Innovations*, 2016 WL 1274803, at *1. The court noted, however, without that additional factual support, "numerous cases have found that factual allegations based on general participation in a relevant market may not form a basis for inferring actual knowledge of a particular patent." *Id.*

Axalta next argues that pre-suit knowledge of the '505 patent cannot be demonstrated by the allegation that a foreign subsidiary of Axalta's predecessor unsuccessfully opposed a European patent related to the '505 patent. (D.I. 13 at 11-12) According to Axalta, the complaint does not allege that Axalta itself had knowledge of the Opposition proceeding. (*Id.*) Further, Axalta argues that the European patent contains different claims and only references the patent application that later issued as the '505 patent. (*Id.* at 12) In response, PPG argues that the complaint recites specific factual allegations demonstrating that Axalta's foreign subsidiary, Axalta Germany, opposed the grant of a "corresponding" or related European patent that "claims virtually identical subject matter." (D.I. 16 at 7-9; D.I. 1 at ¶¶ 34, 42) PPG asserts that, at the

9

very least, these allegations establish pre-suit knowledge through Axalta's willful blindness. (*Id.*)

PPG's allegations in the complaint involving the foreign Opposition proceeding do not support a reasonable inference that Axalta learned of the '505 patent. (D.I. 1 at ¶¶ 34, 42) Knowledge of a foreign patent does not provide notice of a "corresponding" U.S. patent. *See, e.g., MONEC Holding*, 897 F. Supp. 2d at 233 (holding that knowledge of an original patent does not equate to actual knowledge of even a reexamined patent). Moreover, a "[p]laintiff needs to set out more than just the bare fact of the parent/subsidiary relationship in order to make out a plausible claim that *the U.S. Defendants* had the requisite knowledge of the patent-in-suit." *Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS-CJB, 2016 WL 3748772, at *5 (D. Del. July 12, 2016), *report and recommendation adopted*, 2016 WL 9307500 (D. Del. Dec. 22, 2016) (emphasis in original); *See also SoftView*, 2012 WL 3061027, at *5. Finally, the complaint only avers bare allegations of willful blindness without plausible facts supporting the conclusion that Axalta had pre-suit knowledge of the patent. (D.I. 1 at ¶¶ 34, 42)

Additionally, PPG attaches to its answering brief nearly one thousand extraneous pages of exhibits, including an Axalta SEC filing and the European patent file history wrapper, to support further allegations that Axalta's predecessor-in-interest, DuPont Performance Coating GmbH ("Dupont"), initiated the foreign Opposition proceeding, that Axalta requested transfer of the Opposition from DuPont to Axalta Germany, and that Axalta requested permission for its senior researcher to attend the Opposition proceeding. (D.I. 16 at 7-8, Ex. A-E)

The court recommends rejecting these new allegations and PPG's attempt to amend its pleading in its answering brief. Moreover, the court will not consider voluminous, extraneous material which has not been referenced in the original complaint. *See Pa. ex rel. Zimmerman v.*

10

*PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that the complaint may not be amended by the briefs in opposition to a motion to dismiss); *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings"). Therefore, the court recommends granting Axalta's motion to dismiss the claims of indirect infringement that are based on pre-suit knowledge of the patent.

### 2. Post-Suit Knowledge of the Patent

Because the court has found that PPG failed to adequately allege pre-suit knowledge of the '505 patent, the court must further consider whether notice of the patent first obtained from service of the complaint may support a claim for post-filing indirect infringement. *See SoftView*, 2012 WL 3061027, at *7.

Axalta argues that PPG's claims for indirect infringement should be dismissed to the extent PPG relies on service of the complaint to serve as the basis for Axalta's actionable knowledge. (D.I. 13 at 12-13) In response, PPG argues that service of the complaint is sufficient to provide knowledge of the patent-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date. (D.I. 16 at 10-11)

On this issue, there is divided precedent in this District. *See SoftView*, 2012 WL 3061027, at *7. Here, the court recommends finding that the filing of the complaint is sufficient notice for an induced infringement claim based on post-filing conduct. *See id.* ("In the Court's view, an accused infringer is on notice of the patent(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents"); *See also IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 18-826-

11

WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) (finding that "As to [defendant's] post-suit activities…knowledge of the patents was clearly conveyed to [defendant] by the service of the complaint"); *See also Pragmatus Telecom, LLC v. Ford Motor Co.*, C.A. No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (noting that service of the complaint is sufficient to provide notice of the patent in support of a claim for post-filing indirect infringement). Accordingly, the court recommends denying Axalta's motion to dismiss to the extent it seeks dismissal of PPG's indirect infringement allegations based on post-filing conduct.

### C. Willful Infringement

To state a claim for willful infringement, the pleading "must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *See VLSI Tech.*, 2019 WL 1349468, at *1 (stating that knowledge of the patent and knowledge of infringement are elements of willful, induced, and contributory infringement). For the reasons previously stated at § IV.B.1, *supra*, the complaint does not plausibly allege that Axalta had pre-suit knowledge of the '505 patent. Moreover, the complaint contains a single conclusory allegation, that "Axalta is indirectly infringing the '505 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, or flagrant." (D.I. 1 at ¶ 38) Therefore, the court recommends granting Axalta's motion to dismiss PPG's willful infringement claim.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART and DENY-IN-PART without prejudice Axalta's motion to dismiss. (D.I. 12) Because this is the first time the court has found these claims to be deficiently pleaded and because leave to amend should be given freely "when justice so requires," Fed. R. Civ. P. 15(a)(2), the court recommends that dismissal of the complaint be without prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 26, 2022

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE